# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 10, 2012          Decided February 1, 2013

No. 12-5141

SECURITIES AND EXCHANGE COMMISSION,
APPELLEE

v.

AMERICAN INTERNATIONAL GROUP,
APPELLANT

SUE REISINGER,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-02070)

*Alexandra M. Walsh* argued the cause for appellant. With her on the briefs was *William H. Jeffress, Jr*.

*J. Joshua Wheeler* argued the cause and filed the brief for appellee Reisinger.

Before: BROWN and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Compelled by a consent decree, American International Group, Inc. ("AIG") promised to hire an independent consultant to evaluate a number of internal policies and past transactions. Appellee Sue Reisinger, a reporter for *Corporate Counsel* and *American Lawyer* magazines, wants to know what the consultant found, but AIG has no interest in sharing the reports. The district court sided with Reisinger, concluding the reports are judicial records to which she has a common law right of access. We disagree and reverse.

I

In 2004, after the Securities and Exchange Commission ("SEC") charged AIG with securities violations, the parties entered into a consent decree, agnostic about AIG's culpability, that enjoined future violation and required AIG to pay disgorgement to a victim restitution fund, establish a committee to review transactions prospectively, and retain an independent consultant to review transaction policies and procedures and to examine a number of AIG's completed transactions. Of particular relevance to this appeal, the consent decree required the consultant to prepare reports documenting all findings and conclusions ("IC reports").

The consent decree was silent on the question of disclosure, but the parties subsequently filed a joint motion to "clarify" that the IC reports were to be confidential. The district court agreed, ordering that the reports "shall be disseminated only to those persons and entities and their agents, specified in this Consent," or as permitted by the court "for good cause shown." Since then, the district court has found good cause twice. First, it permitted disclosure to the Office of Thrift Supervision at the request of both parties, and second, it permitted disclosure to the House of

Representatives Committee on Oversight and Government Reform at the request of the SEC.

In 2011, Reisinger requested access to the IC reports, asserting both common law and First Amendment rights of access. The district court concluded—over the opposition of the SEC and AIG—Reisinger has a common law right of access and ordered public disclosure of redacted copies of the reports. AIG appealed. Our review is *de novo*. *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997).

## II

The public has a fundamental interest in "keeping a watchful eye on the workings of public agencies." *Wash. Legal Found. v. U.S. Sentencing Comm'n* ("*WLF*"), 89 F.3d 897, 905 (D.C. Cir. 1996) (internal quotation marks omitted). Courts have accordingly recognized a common law right to inspect and copy public records—that is, those "government document[s] created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *Id.* This includes judicial records. Yet not all documents filed with courts are judicial records. Just as a document would not be a public record when it does not "eventuate in any official action or decision," *id.*, whether something is a judicial record depends on "the role it plays in the adjudicatory process." *El-Sayegh*, 131 F.3d at 163. We have thus held that a withdrawn plea agreement the court never ruled on is not a judicial record subject to the common law right of access because the concept of a judicial record "assumes a judicial decision," and with no such decision, there is "nothing judicial to record." *Id.* at 162. Of course, even if a document is a record of the type subject to the common law right of access, the right is not absolute: it is

defeated when the government's interest in secrecy outweighs the public's interest in disclosure. *WLF*, 89 F.3d at 902. But we need not put the parties' competing interests on the scales because we hold that the IC reports are neither judicial records nor public records.

A

The IC reports are not judicial records subject to the right of access because the district court made no decisions about them or that otherwise relied on them.[1] A judicial decision is a function of the underlying record, *El-Sayegh*, 131 F.3d at 162, and if a document was never part of that record, it cannot have played any role in the adjudicatory process: though filing a document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite. Reisinger's argument that the IC reports "played a central role in the adjudication and the ongoing supervision of this case and the determination of the substantive legal rights of AIG and the SEC," Appellee Br. at 12, misses the point. The court's approval of the consent decree was surely a function of its terms (including the provision requiring IC reports), *see, e.g.*, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("Consent decrees entered in federal court must be directed to protecting federal interests."), but the reports' *contents* do not record, explain, or justify the court's decision in any way— nor could they. They did not exist yet, and nothing in the

---

[1] The district court issued an order protecting the reports' confidentiality and ruled below that Reisinger has a right of access to them, but neither decision is relevant to our analysis. *See El-Sayegh*, 131 F.3d at 162 (refusing to find right of access merely because a court examined the documents in question to determine whether they might be filed under seal or because the court was called upon to determine whether they were subject to a right of access).

record suggests the district court cared a whit about the results of the independent consultant's investigation as long as AIG in fact initiated the investigation. Disclosure of the reports would do nothing to further judicial accountability. *See EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1408 (D.C. Cir. 1996) ("[T]he courts are public institutions that best serve the public when they do their business openly and in full view." (internal quotation marks omitted)).

Indeed, the independent consultant had no relationship with the court. The court did not select or supervise the consultant and had no authority to extend the consultant's tenure or modify his authority. The consent decree gave the independent consultant no powers unique to individuals possessing judicial authority, nor did it require the consultant to file his reports with the court—and unlike the court officer in *United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1995), who thought it "prudent" to file the reports with the court anyway, the independent consultant took no such initiative. In fact, the consent decree did not by its terms directly require anything from the independent consultant; it simply specified the work AIG would engage the independent consultant to perform. Presumably, AIG complied with the consent decree merely by hiring the independent consultant subject to the consent decree's terms—regardless of whether the independent consultant in fact followed those terms, for example, by producing the required reports.

This case is thus a far cry from *Amodeo*, invoked by both the district court and Reisinger. The consent decree in that case appointed a "Court Officer" authorized to exercise a number of judicial powers and whose very role depended on a relationship with the district court. *See* 44 F.3d at 143. In holding that the Court Officer's reports were judicial records, the Second Circuit relied heavily on the Court Officer's

judicial authority and the district court's obligation, when addressing an application for enforcement of or relief from the consent decree, to consider the record of "all proceedings . . . to the date of the application." *Id.* at 146. This case presents no such facts, a distinction the Second Circuit has suggested is dispositive. *See Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 F. App'x 878, 881 (2d Cir. 2005) (summary order). AIG concedes that if the district court is one day called upon to enforce the consent decree, and the IC reports' contents are relevant, the reports may become judicial records. But that day has not yet arrived.

Ultimately, it seems, Reisinger wants to evaluate the performance of the SEC and the independent consultant.[2] To that end, she filed a Freedom of Information Act (FOIA) request with the SEC before pursuing the IC reports in the district court, but the SEC—citing the district court's seemingly exclusive jurisdiction over the reports—rebuffed her request. Unfortunately for Reisinger, the value of the reports for proper oversight of the Executive does not itself justify disclosure under the judicial records doctrine. *See El-Sayegh*, 131 F.3d at 163. If the agency can appropriately refuse to disclose the reports under FOIA—we take no position on the matter—then so be it. *See Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 937 (D.C. Cir. 2003).

B

Not surprisingly, Reisinger spends only two paragraphs defending her argument that the IC reports are public records.

---

[2] Reisinger pointed out to the district court that the independent consultant, James Cole, eventually became a U.S. deputy attorney general.

Documents created by the independent consultant are not government documents. Nor do the IC reports memorialize an official matter of legal significance. Reisinger appears to argue that the reports became public documents when they were provided to the government, but such a transfer of possession is not itself sufficient to render them public records. *See WLF*, 89 F.3d at 905–06.

## III

The common law right of access predates the Constitution, *El-Sayegh*, 131 F.3d at 161, so it is not surprising the Framers enshrined analogous principles in the First Amendment, which "guarantees the press and the public access to aspects of court proceedings, including documents, 'if such access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct,'" *id.* at 160 (quoting *Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991)). Yet even assuming the First Amendment applies to the proceedings below, *see Ctr. for Nat'l Sec. Studies*, 331 F.3d at 935 (doubting whether the First Amendment right of access applies to anything beyond criminal judicial proceedings), for the reasons given above, the IC reports are not "aspects of court proceedings" and have no bearing on monitoring judicial conduct.

## IV

Because no common law or First Amendment right of access attaches to the IC reports, the district court's disclosure order is

*Reversed.*