# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 11, 2013          Decided June 21, 2013

No. 12-7078

EVELYN PRIMAS,
APPELLANT

v.

DISTRICT OF COLUMBIA AND CATHY L. LANIER, CHIEF OF
POLICE, IN BOTH HER OFFICIAL AND INDIVIDUAL CAPACITIES,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02317)

*Leslie Deak* argued the cause for appellant. With her on the briefs was *Ted J. Williams*.

*Stacy L. Anderson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With her on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: TATEL and KAVANAUGH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Evelyn Primas, an African-American woman, served for years as a Commander in the District of Columbia's Metropolitan Police Department ("MPD"). But soon after taking office, Chief of Police Cathy Lanier, allegedly in connection with a Department-wide reorganization, informed Primas that, though her responsibilities would remain the same, she would be demoted two ranks. When Primas opted to retire instead of accepting the demotion, Lanier hired a white man to serve in Primas's position at one rank higher than the rank Lanier had offered Primas. Primas then sued the District of Columbia and Chief Lanier, charging them with race and sex discrimination. The district court granted summary judgment in Defendants' favor. On appeal, Primas challenges that decision, as well as the district court's denial of her motion to unseal certain records designated "confidential" during discovery. Because Primas produced sufficient evidence of race and sex discrimination to get to a jury and because the district court failed to state its reasons for keeping the records sealed, we reverse and remand for further proceedings.

## I.

Appellant Evelyn Primas joined the Metropolitan Police Department in 1978 and, after working her way up through the ranks, was appointed to serve as Director of the Court Liaison Division at the rank of Commander. In that position, she was responsible for overseeing interactions between the MPD and the courts, the U.S. Marshals, and the U.S. Attorney's Office.

Primas's case traces its roots to September of 2007, when newly appointed Chief of Police Cathy Lanier, a white woman, undertook a major reorganization of the MPD. Seeking to "streamline[ ] the [Department] to better serve the District," Lanier overhauled the MPD's organizational structure and, after

reviewing the resumes of all high-ranking officials and conducting several interviews, made numerous personnel changes. Some officials were demoted, others were transferred, and a few received promotions. Neither Primas's division nor her position emerged from the reorganization unscathed: Lanier decided to relocate the Court Liaison Division into a new bureau and to reduce the rank of Primas's Director position. According to Lanier, the rank of Commander was no longer appropriate "given the size of the Court Liaison Division and the responsibilities thereunder."

On September 13, 2007, Lanier called Primas into a meeting and informed her that her position was to be downgraded two ranks—from Commander to Captain. Primas, who intended to spend another two years at the MPD, maintains that Lanier also asked her how long she planned to stay on with the Department, advising her to speak with her family about whether she was ready to retire. Lanier gave Primas a week to decide: stay on as Director of the Court Liaison Division at the lower rank of Captain or retire early. Five days later, on September 18, Primas informed Lanier that she had decided to retire effective September 29 because she could not afford the reduction in salary and pension benefits that would accompany the change in rank and because she believed explaining the change to judges, court personnel, and attorneys who addressed her as "Commander" would be humiliating.

Just a few days later, on September 21 or 22, Lanier selected Captain Marcus Westover, a slightly younger white man, to fill the position Primas was leaving vacant. Critically for our purposes, however, Lanier offered Westover the position at the rank of Inspector—one rank higher than the Captain rank that she had offered Primas. Lanier testified that she chose Westover, the most senior MPD Captain, because she believed him to be the most qualified candidate for the job. In

particular, Lanier pointed to Westover's experience in reforming practices regarding "papering"—the process of presenting a case to a prosecuting attorney for a charging decision. As for why she offered him the position at the rank of Inspector, Lanier explained that she had realized "at the last minute" that the Director of the Court Liaison Division needed the authority that accompanies the higher rank to deal effectively with judges, attorneys, and agencies who might be reluctant to go along with reforms.

On September 25, having learned of Westover's selection at a higher rank, Primas delivered a letter to Chief Lanier claiming that she had been unlawfully discriminated against and was retiring under duress. Although Lanier maintains that she was taken aback at the accusation, she nonetheless declined to offer Primas her old position at the rank of Inspector because she had already given it to Westover and thought him the best person to implement papering reforms. Instead, Lanier directed one of her Assistant Chiefs to offer Primas a different Inspector-level position—as commanding officer of the Sixth District substation. Primas emphasizes, however, that the Sixth District position was not vacant at the time the offer was made. In any event, Primas declined to accept it on the ground that the proffered position amounted to an unjustified one-level demotion in rank from her old Commander position.

Primas filed a timely complaint of discrimination with the EEOC and then filed suit in the United States District Court for the District of Columbia. She claims that the District and Lanier discriminated against her based on her race, sex, and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, and the D.C. Human Rights Act, D.C. Code §§ 2-1401.01 *et seq*. After the district court dismissed various parts of her complaint, *see Primas v. District*

*of Columbia*, 718 F. Supp. 2d 59, 61–62 (D.D.C. 2010), the remainder of the case proceeded to discovery.

The parties stipulated to a protective order governing disclosures made during discovery. Information a party designated as "confidential" would be filed under seal and disclosed only to counsel, experts, and court personnel; a party could challenge a "confidential" designation by filing a motion with the court. Because portions of Chief Lanier's deposition and some of the District's answers to Primas's interrogatories contain information about the race, gender, and age of MPD officers not parties to this suit, the District designated them "confidential." Primas filed a motion contesting these "confidential" designations, but the district court denied it without explanation.

After discovery, the District filed a motion for summary judgment on Primas's remaining claims, and the district court granted that motion in full. *See Primas v. District of Columbia*, 878 F. Supp. 2d 1, 4–8 (D.D.C. 2012). As to Primas's sex and race discrimination claims, the court concluded that she had failed to rebut MPD's legitimate, non-discriminatory explanation for her reduction in rank: the reorganization of the Department's command structure. *See id.* at 4–7. The court also found that Primas had effectively conceded her age discrimination claim. *See id.* at 7–8.

On appeal, Primas presses only her sex and race discrimination claims and also challenges the court's denial of her motion to unseal records. We first tackle the summary judgment question and then turn to the records issue.

## II.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most

favorable to Primas, the non-moving party, and drawing all reasonable inferences in her favor. *See Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009). We may affirm only if we conclude that no reasonable jury could reach a verdict in Primas's favor. *Id.*

In *Brady v. Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008), this Circuit laid out a simple form of inquiry for discrimination cases of this sort: "In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, . . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id. Brady*'s application here is straightforward. Although there was initially some question about the adverse action element—in particular, about whether Primas needed to show constructive discharge—the District now concedes that Primas suffered an adverse employment action when her position was reduced in rank and pay. And for her part, Primas concedes that the reorganization of MPD to reduce hierarchy constitutes a legitimate, non-discriminatory explanation for that action. Accordingly, the "central question"—whether Primas produced evidence sufficient for a jury to find that the reorganization was mere pretext for sex or race discrimination—is all that remains.

Without overt evidence of discriminatory intent, Primas's case turns on her attempts to show "that the defendant's explanation is unworthy of credence" and that a jury could "reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000); *see also Czekalski v. Peters*, 475 F.3d 360, 366 (D.C. Cir. 2007) ("[O]ne way for a plaintiff to show that an adverse employment decision was made for a discriminatory reason is to 'show[ ] that the nondiscriminatory explanation the defendant proffered for its decision was false.' " (quoting *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003)) (alteration in original). Although record evidence demonstrates that Lanier did in fact implement a large-scale reorganization of MPD at the time Primas's rank was reduced, Primas makes numerous arguments in an effort to show that this very real reorganization was not the actual reason for her demotion. Some of these—like her allegations that Lanier's subsequent offer of an Inspector position was a "sham offer" indicative of discriminatory intent, that the selection process for filling positions following the reorganization was so irregular as to suggest discrimination, and that members of her protected classes were treated worse during the reorganization as a general matter—are unpersuasive. Others hit closer to their marks. But at its core, Primas's best case is this: Lanier offered the Director position to Primas, an African-American woman, at the rank of Captain; then just a few days later, after Primas retired, Lanier offered the same position to Westover, a white man, at the higher rank of Inspector.

Viewing this evidence in the light most favorable to Primas, *see Jones*, 557 F.3d at 674, we believe a reasonable jury could conclude that Lanier was obscuring her true reason for offering Westover the same position at a higher rank than she had offered Primas. Lanier's only explanation is that she realized "at the last minute" that a higher rank would lend the Director the authority necessary to carry out her responsibilities, and a jury could well find that the timing of that alleged realization—during those few days between Primas's rejecting the position and Lanier's offering it to Westover—was

suspicious. Especially given Lanier's testimony that Primas had been facing resistance even as a Commander, a jury hearing Lanier's testimony could reasonably infer that Lanier knew from the start that the Captain rank would be inappropriate for the Director position. And given Lanier's quick selection of a white man to replace Primas, the jury could go on to infer that race or sex discrimination motivated her actions. *See Reeves*, 530 U.S. at 147.

True, Lanier never actually removed Primas from the Director position. Instead, Lanier initially offered Primas the opportunity to stay on, albeit as a Captain. But especially because that two-level demotion would significantly affect Primas's pension benefits, Lanier could well have expected that Primas would reject the offer, thus freeing Lanier to give the position to a white man at the Inspector rank. It is also true that Lanier offered Primas a different Inspector-level position after Primas accused her of discrimination. But that offer fails to demonstrate that Lanier's decision to offer Primas the Director position at a lower rank than she offered it to Westover—the action challenged here—was not motivated by discriminatory intent.

All that said, a jury could reasonably view the evidence differently and conclude that Lanier is telling the truth or, even if not, that she had some other non-discriminatory reason for her actions. The point, however, is that this case hinges on the answer to a question that itself hinges on credibility determinations more appropriately made from a jury's box than a judge's bench: Is Lanier telling the truth when she says that she gave Westover the Inspector rank only because she belatedly realized that the Court Liaison Director would need the authority that goes with that rank? Or did Lanier instead plan to force Primas out of the Director position by offering it to her at a lower rank, freeing Lanier to give the position to a

white man at a higher rank? Because the record permits either inference, it is the jury's job—not ours—to choose between them. *See Washington Gas-Light Co. v. Lansden*, 172 U.S. 534, 545 (1899) ("If different inferences might fairly be drawn from the evidence by reasonable men, then the jury should be permitted to choose for themselves."); *Metrocare v. Washington Metropolitan Area Transit Authority*, 679 F.2d 922, 925 (D.C. Cir. 1982) ("It is the essence of the jury's function to select, from among conflicting inferences and conclusions, that which it finds most reasonable."). Accordingly, we shall reverse the district court's grant of summary judgment and remand Primas's sex and race discrimination claims for trial.

## III.

"[T]he starting point in considering a motion to seal court records is a 'strong presumption in favor of public access to judicial proceedings.' " *EEOC v. National Children's Center, Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting *Johnson v. Greater Southeast Community Hospital Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)). In *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), we identified six factors "that might act to overcome this presumption":

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*National Children's Center*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22).  We review a district court's application of these factors only for abuse of discretion. *See id.*

But here we have nothing to review because the district court gave no reasons at all for denying Primas's motion to unseal. "[I]t is imperative that a district court articulate its reasons for electing to seal or not to seal a record," *id.* at 1410, and, as the parties now agree, *see* Appellees' Br. 48–51; Appellant's Reply Br. 33–35,  the district court's failure to explain itself leaves us "unable to review the . . . exercise of its discretion." *National Children's Center*, 98 F.3d at 1410. Accordingly, we shall remand for the district court to apply the *Hubbard* factors in the first instance.

## IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment on Primas's race and sex discrimination claims and remand for further proceedings consistent with this opinion.

*So ordered.*