# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 18, 2017         Decided August 1, 2017

No. 16-5188

METLIFE, INC.,
APPELLEE

v.

FINANCIAL STABILITY OVERSIGHT COUNCIL,
APPELLEE

BETTER MARKETS, INC.,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00045)

———

*Stephen W. Hall* argued the cause for appellant Better Markets, Inc. With him on the briefs were *Dennis M. Kelleher* and *Austin W. King*.

*Anne L. Weismann* was on the brief for *amici curiae* Campaign for Accountability, et al. in support of intervenor-appellant.

*Amir C. Tayrani* argued the cause for appellee MetLife, Inc. With him on the brief was *Eugene Scalia*. *Ashley S. Boizelle* and *Indraneel Sur* entered appearances.

*Nicolas Riley*, Attorney, U.S. Department of Justice, argued the cause for federal appellee. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Mark B. Stern* and *Daniel Tenny*, Attorneys.

Before: GARLAND, *Chief Judge*, and KAVANAUGH and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: The underlying question in this case is whether the Dodd-Frank Act abrogates the common-law right of public access to judicial records. The appellees maintain that it does. In their view, the Act categorically requires courts to seal parts of briefs and appendices containing information that a nonbank financial company has submitted to the Financial Stability Oversight Council for its use in deciding whether to designate the company for enhanced supervision by the Federal Reserve.

We disagree. The right of public access is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch. Although the right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests. There is nothing in the language of Dodd-Frank to suggest that Congress intended to displace the long-standing balancing test that courts apply when ruling on motions to seal or unseal judicial records. Accordingly, because the district court did not apply that test to the motion to unseal the records at issue here, but instead ruled that they were categorically exempt from disclosure, we vacate its judgment and remand the case for further proceedings.

3

I

Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010), to mitigate the risks that certain financial institutions could pose to the stability of the national financial system. S. Rep. No. 111-176, at 2 (2010). The Act tasks the Financial Stability Oversight Council (FSOC) with carrying out that objective. Among other powers, FSOC may designate a "nonbank financial company" for enhanced supervision by the Federal Reserve System's Board of Governors if the Council determines that "material financial distress" at the company "could pose a threat to the financial stability of the United States." 12 U.S.C. § 5323(a)(1). To assist it in making designation decisions, FSOC may require nonbank financial companies to submit financial data and information to the Council. *Id.* § 5322(d)(3)(A). FSOC must "maintain the confidentiality of any data, information, and reports" that a company submits. *Id.* § 5322(d)(5)(A).

In July 2013, FSOC notified MetLife, Inc. that it was considering the company for designation. Over the course of the next year, MetLife voluntarily submitted over 21,000 pages of documents to FSOC to help it reach a determination. In December 2014, FSOC determined that "material financial distress" at MetLife "could pose a threat to the financial stability of the United States," *id.* § 5323(a)(1), and therefore designated MetLife for supervision.

Pursuant to 12 U.S.C. § 5323(h), MetLife challenged FSOC's designation determination in district court. That section authorizes a nonbank financial company to seek judicial review of a final determination by the Council. The court's review is "limited to whether the final determination . . . was arbitrary and capricious." *Id.*

During the ensuing summary-judgment briefing, MetLife and FSOC worked together to prepare redacted and unredacted versions of their briefs and 16-volume joint appendix. Some redactions were of portions of FSOC's final determination designating MetLife; others were of data and information that MetLife had voluntarily submitted to FSOC. Both parties sought leave to file their unredacted briefs and unredacted joint appendix under seal. The district court granted their requests. Thereafter, the parties filed the unredacted documents under seal and made the redacted versions publicly available. Before the district court issued its ruling on the merits, MetLife filed new versions of its briefs and the joint appendix with fewer redactions.

MetLife redacted a total of approximately 22 lines from the final, public versions of its opening and reply briefs. *See* J.A. 73-80; MetLife Br. 9, 23. FSOC redacted approximately the same number of lines from the public versions of its briefs. *See* J.A. 59-72. Those public briefs contained 90 citations to sealed portions of the joint appendix. Better Markets Br. 5. All together, over 1,900 pages of the joint appendix -- more than two-thirds of the total -- were redacted from the public version. *Id.* at 4.

Better Markets, Inc. is a "nonpartisan, nonprofit, public-interest organization" focused on the United States financial system. Better Markets Br. at iii. Pursuant to Federal Rule of Civil Procedure 24(b), the organization moved to intervene in the district court litigation and to unseal the briefs and joint appendix. Before ruling on those motions, the court granted MetLife's summary-judgment motion and rescinded FSOC's designation of MetLife on the ground that it was arbitrary and capricious. *See MetLife, Inc. v. Fin. Stability Oversight Council*,

177 F. Supp. 3d 219, 242 (D.D.C. 2016).[1]  The court initially entered its opinion under seal and allowed the parties to suggest redactions.  After neither party requested any, the court unsealed the opinion in its entirety.

The district court next ruled on Better Markets' motions.  Although the court permitted Better Markets to intervene, it denied the motion to unseal.  *See MetLife, Inc. v. Fin. Stability Oversight Council*, 2016 WL 3024015, No. 15-0045 (D.D.C. May 25, 2016).  The court concluded that Dodd-Frank's confidentiality provision, 12 U.S.C. § 5322(d)(5)(A), required that the relevant portions of the briefs and joint appendix remain sealed because they included data, information, and reports MetLife submitted to FSOC.  *MetLife*, 2016 WL 3024015, at *6.  Dodd-Frank, the court said, "supersedes the multi-factor inquiry prescribed by the D.C. Circuit" for ruling on motions to seal or unseal judicial records.  *Id.* at *5 (referencing *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980)).  The court further suggested that the briefs and appendix may not qualify as "judicial records" in any event.  *See id.* at *6-7.

Better Markets now appeals the denial of its motion to unseal.[2]

---

[1] FSOC appealed, and that matter is pending before another panel of this court. *MetLife, Inc. v. Fin. Stability Oversight Council*, No. 16-5086 (D.C. Cir. filed Apr. 20, 2016).

[2] Better Markets also asks us to review the standard the district court applied in granting its motion to intervene.  Because the district court granted that motion, we decline to take up Better Markets' challenge to the court's reasoning.  *See Camreta v. Greene*, 563 U.S. 692, 702 (2011) (noting that a court will usually decline "review of a prevailing party's challenge even when he has the requisite stake" in the appeal).

6

II

Almost 40 years ago, the Supreme Court said it was "clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (internal citation omitted). Two years later, in *United States v. Hubbard*, our court likewise "recogniz[ed] this country's common law tradition of public access to records of a judicial proceeding," noting that "[a]ccess to records serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." 650 F.2d at 314-15. "This common law right," we explained, "is fundamental to a democratic state":

> As James Madison warned, "A popular Government without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy: or perhaps both. . . . A people who mean to be their own Governors, must arm themselves with the power which knowledge gives." Like the First Amendment, then, the right of inspection serves to produce "an informed and enlightened public opinion." Like the public trial guarantee of the Sixth Amendment, the right serves to "safeguard against any attempt to employ our courts as instruments of persecution," to promote the search for truth, and to assure "confidence in . . . judicial remedies."

*Id.* at 315 n.79 (quoting *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon*, 435 U.S. 589).[3]

In light of these considerations, there is a "strong presumption in favor of public access to judicial proceedings." *Hubbard*, 650 F.2d at 317; *see Hardaway v. D.C. Housing Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016). That presumption may be outweighed in certain cases by competing interests. In *Hubbard*, we crafted a six-factor test to balance the interests presented by a given case. *See* 650 F.2d at 317-22. Specifically, when a court is presented with a motion to seal or unseal, it should weigh: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *Hubbard*, 650 F.2d at 317-22). A seal may be maintained only "if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires." *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981) (internal quotation marks and citations omitted).

----

[3] *See also Nixon*, 435 U.S. at 598 (noting that the right of access promotes "the citizen's desire to keep a watchful eye on the workings of public agencies"); *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.) ("[I]t is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.").

In subsequent cases involving motions to seal or unseal judicial records, the *Hubbard* test has consistently served as our lodestar because it ensures that we fully account for the various public and private interests at stake. *See, e.g.*, *Hardaway*, 843 F.3d at 980; *Primas v. District of Columbia*, 719 F.3d 693, 698-99 (D.C. Cir. 2013); *Nat'l Children's Ctr.*, 98 F.3d at 1409-11; *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 & n.14 (D.C. Cir. 1991).

Relying on the common-law right of public access to judicial records, Better Markets contends that the district court improperly sealed parts of the summary-judgment briefs and joint appendix because it did so without applying the *Hubbard* test.[4] MetLife and FSOC respond with two principal contentions: (1) those documents do not qualify as judicial records subject to the common-law right; and (2) even if they do, the Dodd-Frank Act supersedes that right. We address these contentions in the following two Parts of this opinion. Both are subject to de novo review. *See Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 920, 936-37 (D.C. Cir. 2003); *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997).

---

[4] Amici curiae supporting Better Markets ask us to hold that the public has not only a common-law right, but also a First Amendment right of access to the records in this case. Better Markets adopts this argument in its reply brief. The question, however, is not properly before us. Better Markets disavowed any First Amendment claim before the district court, *see* Better Markets Mot. to Intervene at 21 n.10, and the claim is therefore waived, *see Potter v. District of Columbia*, 558 F.3d 542, 547 (D.C. Cir. 2009). Nor may amici expand an appeal's scope to sweep in issues that a party has waived. *See Eldred v. Reno*, 239 F.3d 372, 378 (D.C. Cir. 2001).

9

III

We begin with common ground. "[N]ot all documents filed with courts are judicial records." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013). Rather, "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *Id.* (quoting *El-Sayegh*, 131 F.3d at 163).

On appeal, FSOC does not dispute that the documents at issue here, whether sealed (redacted) or not, qualify as judicial records.[5] MetLife, however, does. In its view, the sealed parts of those documents did not play a sufficient role in the adjudicatory process to qualify as judicial records because the district court's opinion granting summary judgment, which is publicly available in its entirety, did not quote or cite any of those sealed (redacted) parts.

On this we disagree. At the outset, we note that MetLife's claim is inconsistent with the seminal *Hubbard* case itself. *Hubbard* involved the sealing of documents that had been seized pursuant to a search warrant and that were the subject of a motion to suppress. 650 F.2d at 300-02 & n.22. We treated those documents as judicial records, subject to the balancing test described above, notwithstanding that their "contents were not specifically referred to or examined upon during the course of those proceedings and [their] only relevance to the proceedings derived from the defendants' contention that many of them were *not* relevant to the proceedings, *i.e.*, that the seizure exceeded the scope of the warrant." *Id.* at 316; *see id.* at 300 (noting that "only a small number of the documents were referred to individually by nature or content by either witnesses in the

---

[5] FSOC took a different position in the district court. *See* FSOC Response to Motion to Intervene at 6-7.

suppression hearing or by the trial judge in his ultimate decision on the motion").

A brief (or part of a brief) can affect a court's decisionmaking process even if the court's opinion never quotes or cites it. To affect the court's decision, after all, is the reason parties file briefs. "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983). There is no doubt, then, that parties' briefs play a central role in the adjudicatory process.

So, too, the joint appendix. Just as our adversarial system relies on the arguments presented in the parties' briefs, our system of judicial review of agency action requires the court to consider the record upon which an agency made its decision. FSOC uses the information it collects from a nonbank financial company to determine whether the company should be designated for supervision because "material financial distress at the . . . company . . . could pose a threat to the financial stability of the United States." 12 U.S.C. § 5323(a)(1). When, pursuant to 12 U.S.C. § 5323(h), a court reviews a designation determination to decide whether it was "arbitrary and capricious," the court must examine the administrative record upon which the Council based its decision. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("In applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence . . . .").[6]

---

[6] *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *John Doe, Inc. v. DEA*, 484 F.3d 561, 570 (D.C. Cir. 2007) ("We review the

Indeed, "[n]ormally, an agency rule would be arbitrary and capricious if the agency has [inter alia] . . . offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Under the district court's local rules, the joint appendix is the place the court will look to find the administrative record. In "cases involving the judicial review of administrative agency actions," those rules require counsel to "provide the Court with an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in any memorandum in support of or in opposition to any dispositive motion." U.S. Dist. Ct. for D.C. Local R. 7(n)(1). Thus, by definition, the joint appendix contains information with which the parties hope to influence the court, and upon which the court must base its decision. *See Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 906 (D.C. Cir. 1996) ("[T]he meaning and legal import of a judicial decision is a function of the record upon which it was rendered.").

MetLife notes that, in *SEC v. American International Group*, this court found that an independent consultant's reports were "not judicial records subject to the right of access because the district court made no decisions about them or that otherwise relied on them." 712 F.3d at 3-4. It maintains that the same is true here. It is not. Although the reports at issue in *American International Group* were prepared pursuant to the court's consent decree, they were never filed with it. *Id.* at 4. Because those reports never became part of the district court's docket and

[agency's] rationale for denying [the] permit under the APA's familiar arbitrary and capricious standard. In conducting our judicial review, we focus on the administrative record that formed the basis for the agency's decision . . . ." (internal citation omitted)).

were produced *after* the court's decision, the decision was not "about them" and the court could not have "relied on them" in adjudicating the case. *Id.*; *see id.* (noting that "the independent consultant had no relationship with the court").

Here, by contrast, the briefs and appendix were filed before the district court's decision and were intended to influence it. We have no doubt that the court read the briefs, including the parts it did not cite or quote. And it was required by Supreme Court precedent to examine the appendix, including the sealed portions, because the appendix contained the administrative record upon which the court's review had to be based. *See supra* note 6. The fact that the court did not cite or quote portions of those documents does not mean that it did not "rely" on them -- if only to determine that they did not dissuade it from its bottom-line conclusion. And the court certainly made "decisions about them": it decided that MetLife's briefs persuaded it while FSOC's did not; and it decided that FSOC's designation determination was arbitrary and capricious in light of the administrative record contained in the joint appendix.[7]

In suggesting that the sealed materials are not judicial records, the district court emphasized that its opinion -- "'the quintessential business of the public's institution[],' . . . -- is

---

[7] In *United States v. El-Sayegh*, we held that a plea agreement submitted to the court only to allow it to rule on the government's motion to seal that agreement was not a judicial record. 131 F.3d at 163. Reasoning that the concept of judicial records "assumes a judicial decision," the court concluded that the unconsummated plea agreement could not be a judicial record because "[t]he only judicial act related to [that] document [was] the district court's determination to release it." *Id.* at 162. Here, of course, the pertinent judicial act related to the briefs and appendix was not the decision whether to release them, but rather the decision to vacate FSOC's designation determination.

entirely unsealed." *MetLife,* 2016 WL 3024015, at \*6 (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409). The issuance of a completely public opinion contributes significantly to the transparency of the court's decisionmaking process. But the fact that one judicial record is public does not determine whether other documents qualify as judicial records as well. Without access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why). For that reason, we have no doubt that an appellate court reviewing the district court's decision to vacate FSOC's determination would want to examine all of the materials -- sealed and unsealed -- to determine whether the court correctly concluded that the agency's decision was arbitrary and capricious.[8] And that is more than enough to make them judicial records.

Finally, it is important to understand the implications of adopting MetLife's contrary view. Carried to its logical conclusion, that view would permit the redaction of every page of a brief or joint appendix that a court opinion did not cite or quote -- without any analysis under *Hubbard* -- because such pages would not qualify as judicial records. Needless to say, this would greatly diminish the common-law right of access.

The reader of the current opinion has likely noticed that no part of it is redacted, and that we have not cited or quoted every

---

[8] We note that, at the oral argument of the appeal from the district court's decision regarding FSOC's designation of MetLife, there was in fact a discussion of a study contained in a sealed portion of the joint appendix. *See* Oral Arg. Tr. at 29, *MetLife, Inc. v. Fin. Stability Oversight Council*, No. 16-5086 (addendum to Better Markets Reply Br.).

page of the parties' appellate briefs or joint appendix. We assure the reader, however, that we have read those documents (including the parts not cited), that we have "relied" on them in reaching our decision (sometimes being persuaded, sometimes not), and that our decision is "about them" taken as a whole. We have no doubt that those documents, too, are judicial records.

IV

MetLife and FSOC contend that, even if the sealed materials qualify as judicial records subject to the common-law right of access, the Dodd-Frank Act supersedes that right. The district court agreed, holding that Dodd-Frank renders *Hubbard* inapplicable. Although it is true that the *Hubbard* inquiry must yield to a statute "when Congress has spoken directly to the issue at hand," *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 937, the Dodd-Frank Act is not such a statute.

A

The Dodd-Frank provision upon which the district court relied is 12 U.S.C. § 5322(d)(5). Subsection (A) states: "[t]he Council, the Office of Financial Research, and the other member agencies shall maintain the confidentiality of any data, information, and reports submitted under this subchapter." 12 U.S.C. § 5322(d)(5)(A). MetLife argues that this language "categorically protects" the sealed portions of the briefs and joint appendix from public disclosure without the need for a *Hubbard* analysis. MetLife Br. 16. But even assuming that all of the sealed materials constitute confidential "data, information, and reports" that were submitted to FSOC -- a fact that Better Markets disputes -- subsection (A) requires only that "[t]he Council, the Office of Financial Research, and the other member

agencies" keep those materials confidential.[9]  It imposes no such obligation on -- and does not even mention -- the courts.

There is no reason to read the statute atextually to include such an obligation.  *See, e.g.*, *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (internal citations omitted)).  To the contrary, we can reasonably assume that Congress would not have overturned the longstanding presumption favoring judicial transparency by a provision that mentions executive agencies but not the judiciary.  *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) ("Congress, we assume, is familiar with the common-law rule and does not mean to displace it *sub silentio*.").

The remaining two subsections of § 5322(d)(5) reinforce our conclusion that subsection (A) was not meant to categorically bar disclosure by courts.

First, subsection (B) provides that "[t]he submission of any nonpublicly available data or information under this subsection . . . shall not constitute a waiver of, or otherwise affect, any privilege arising under Federal or State law (including the rules of any Federal or State court) to which the data or information is otherwise subject."  12 U.S.C. § 5322(d)(5)(B).  This subsection plainly refers to privileges against disclosure that parties may have in litigation.  But if subsection (A) meant that

---

[9] No party disputes that § 5322(d)(5)(A) applies to information that a nonbank financial company voluntarily submits to FSOC, *see* 12 U.S.C. § 5322(a)(2)(A), as well as to information that such a company is required to submit to FSOC, *see id.* § 5322(d)(3)(A).

the submission of material to FSOC categorically protects it from disclosure by a court, there would be no need to mention other privileges against disclosure (or the waiver of such privileges). Hence, the appellees' construction of subsection (A) would render subsection (B) superfluous, contravening the principle that "[a] statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (internal quotation marks omitted).[10]

Second, subsection (C) states that the Freedom of Information Act (FOIA), 5 U.S.C. § 552, "including the exceptions thereunder, shall apply to any data or information submitted under this subsection." 12 U.S.C. § 5322(d)(5)(C). By virtue of this provision, all data and information that MetLife submitted to FSOC must be released by the Council if requested under FOIA, *see* 5 U.S.C. § 552(a)(3)(A), unless one of that statute's enumerated exemptions protects it, *see id.* § 552(b); *see also DOJ v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). To be sure, some of that data and information may well be covered by FOIA exemptions that preclude disclosure.[11] But by subjecting

---

[10] Moreover, as discussed in Part II, the only "privilege" against disclosure that MetLife has with respect to judicial records is defined by the *Hubbard* analysis, and subsection (B) provides that this "privilege" is not "affect[ed]" by Metlife's submission of information to FSOC. We also note that subsection (B) only protects the submission of "*nonpublicly available* data or information." In this way as well, the statute does not contemplate the categorical judicial protection for which MetLife argues.

[11] *See, e.g.*, 5 U.S.C. § 552(b)(4) (exempting "trade secrets and commercial or financial information obtained from a person and privileged or confidential"); *id.* § 552(b)(8) (exempting information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions").

that material to FOIA at all, Congress made clear that it did not intend that the information be absolutely exempt from disclosure. And it seems unlikely that Congress would have wanted some submitted material to be available upon a FOIA request to the agency, but wholly unavailable upon a motion to unseal judicial records filed in a court.

B

The district court and appellees have raised a number of extra-textual arguments for concluding that the Dodd-Frank Act displaces the common-law right of access to judicial records. We address those arguments in this subpart. *See NLRB v. SW General, Inc.*, 137 S. Ct. 929, 942 (2017) ("The text is clear, so we need not consider this extra-textual evidence. In any event, [that] evidence is not compelling.").

1. Noting that Dodd-Frank provides a right to judicial review of designation determinations, the district court regarded it as "unthinkable that Congress would condition the confidential treatment of a company's information on that company's refraining from seeking judicial review expressly afforded to it by the same statute." *MetLife*, 2016 WL 3024015, at *6. Similarly, FSOC argues that "[a] nonbank financial company does not forfeit the protections of [§ 5322(d)(5)(A)] by seeking judicial review of a designation." FSOC Br. 11; *see also* MetLife Br. 19. We reject this argument for several reasons.

First, it assumes what it must prove: applying *Hubbard* cannot be said to require a company to "forfeit" the protections of § 5322(d)(5)(A) unless those protections apply not only to FSOC but also to the courts. But as we have said above, the language of § 5322(d)(5) does not make those protections

applicable to the latter. Nor do the appellees cite any legislative history that suggests Congress wanted them to be.

Second, a company does not in fact surrender (or "forfeit") the confidentiality of its information by seeking judicial review. Instead, *Hubbard* directs courts to weigh the importance of confidentiality, requiring them to take into account "the fact that someone has objected to disclosure," "the strength of any property and privacy interests asserted," and "the possibility of prejudice to those opposing disclosure." *Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317-22). For documents containing sensitive business information and trade secrets, those factors often weigh in favor of sealing and, as *Hubbard* itself noted, courts commonly permit redaction of that kind of information.[12] Moreover, it is important to remember that, even while a company's information is solely in FSOC's hands, its confidentiality is not categorically protected because Dodd-Frank renders it subject to FOIA. *See* 12 U.S.C. § 5322(d)(5)(C).

Finally, there is nothing "unthinkable" about declining to grant categorical protection from disclosure to material that

---

[12] *See Hubbard*, 650 F.2d at 315 & n.81 (noting that "[t]he public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests[,] [including] to protect trade secrets" (citing cases)); *accord Nixon*, 435 U.S. at 598 ("[T]he common-law right of inspection has bowed before the power of a court to insure that its records are not . . . [used] as sources of business information that might harm a litigant's competitive standing."); *see also, e.g.*, *Suture Express, Inc. v. Owens & Minor Distrib., Inc.*, 851 F.3d 1029, 1046-47 (10th Cir. 2017); *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1226, 1228 (Fed. Cir. 2013); *Pepsico, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995).

constitutes the record on review and that may be necessary to understand the basis of a court's decision. To the contrary, noncategorical balancing tests analytically similar to *Hubbard*'s are the standard for ruling on motions to seal or unseal judicial records in every Circuit.[13]

2. In a related vein, FSOC worries that applying *Hubbard* to the judicial records at issue here "would discourage nonbank financial companies and third parties from sharing confidential information with the Council, thereby undermining the Council's ability to perform its core functions under Dodd-Frank." FSOC Br. 12. As just discussed, continued confidential treatment of sensitive information is still possible under *Hubbard*. In addition, companies will still have reason to voluntarily provide information that they think will help them avoid designation (and likewise, will have the same incentive they had before to resist providing information they think will make designation more likely). Finally, in the end Dodd-Frank gives FSOC the trump card: the Act grants the Council the power to require companies to turn over the financial information the Council needs for its work, regardless of the companies' predilections. *See* 12 U.S.C. § 5322(d)(3)(A).

---

[13] *See Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 10 (1st Cir. 1998); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001); *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993); *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983); *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989); *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001).

3. FSOC also contends that Better Markets' § 5322(d)(5)(C) right to seek access to information through FOIA negates any right to seek access through a motion to unseal. But FOIA applies solely to information in the hands of executive agencies and expressly excludes federal courts from its domain. *See* 5 U.S.C. § 551(1)(B) (excluding "the courts of the United States" from the definition of "agency"); *id.* § 552(a) (providing that "[e]ach *agency* shall make available to the public information as follows") (emphasis added). It is therefore "clear that [FOIA] was not intended to restrict the federal courts." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 1177 (6th Cir. 1983). And again, there are no words in § 5322(d)(5)(C), or any legislative history, to the contrary.

4. The appellees rely on several cases for their extra-textual reading of § 5322(d)(5), none of which supports their position.

FSOC argues that *Nixon v. Warner Communications*, 435 U.S. 589, "stands for the principle that a statutory disclosure scheme preempts the common law right of access to public records," and thus establishes that Dodd-Frank's incorporation of FOIA's disclosure scheme preempts that right here. FSOC Br. 12-13 (internal quotation marks omitted). FSOC overreads the case.

The statute at issue in *Nixon*, the Presidential Recordings and Materials Preservation Act, Pub. L. No. 93-526, 88 Stat. 1695 (1974), "created an administrative procedure for processing and releasing to the public . . . all of petitioner's Presidential materials of historical interest, including recordings of the conversations at issue" -- the Nixon tapes. *Nixon*, 435 U.S. at 603. "Considering all the circumstances of this concededly singular case," the Court held "that the common-law right of access to judicial records [did] not authorize release of

the tapes in question from the custody of the District Court." *Id.* at 608.

The administrative procedure for processing and releasing materials created by the Presidential Recordings Act did not exclude the courts from its coverage. *Id.* at 603. By contrast, the administrative procedure that Dodd-Frank incorporates -- FOIA -- does so expressly. *See* 5 U.S.C. § 551(1)(B). Further, the Supreme Court described the Presidential Recordings Act's procedure as "unique." *Nixon*, 435 U.S. at 603. But there is nothing unique about FOIA, which applies to every record of almost every Executive Branch agency. If FOIA's disclosure scheme preempted the common-law right of access to judicial records, there would be little left of that right in litigation involving the federal government; agencies could simply seal all materials that would qualify as "agency records" under FOIA. We do not think the Court contemplated such a result in ruling on the "singular" case of the Nixon tapes.[14]

---

[14] Three other cases that FSOC cites for the "principle that a statutory disclosure scheme preempts the common law right of access to public records" are plainly inapposite. FSOC Br. 13 (internal quotation marks omitted). *Center for National Security Studies v. DOJ* involved a FOIA request to the Department of Justice for records in the Department's possession; it did not involve a conflict between FOIA and the common-law right of access to judicial records. *See* 331 F.3d at 936-37. *United States v. El-Sayegh* held that "[t]he appropriate device" for obtaining access to an unconsummated plea agreement was "a Freedom of Information Act request addressed to the relevant agency," but it did so only after concluding that the plea agreement did not constitute a judicial record subject to a public right of access. 131 F.3d at 163; *see supra* note 7. Finally, *In re Motions of Dow Jones & Co.* held that, "even if there were once a common law right of access to [materials relating to grand jury proceedings], the common law has been supplanted by Rule 6(e)(5) and Rule 6(e)(6) of the Federal Rules of Criminal Procedure." 142 F.3d at 504. But those

The appellees also argue that *In re Sealed Case*, 237 F.3d 657 (D.C. Cir. 2001), stands for the proposition that, when a statute requires an agency to preserve the confidentiality of administrative materials, the statute supersedes the *Hubbard* test and requires that agency materials be sealed during litigation. MetLife Br. 14-15; *see also* FSOC Br. 14-15. We do not read *Sealed Case* so broadly.

In *Sealed Case*, the Federal Election Commission (FEC) petitioned a district court to enforce a third-party subpoena. In connection with its petition, the FEC publicly filed exhibits containing information about an ongoing investigation, despite the agency's statutory mandate to keep the information confidential. 237 F.3d at 661, 665. The subject of the investigation filed a motion to seal the exhibits, which the district court denied. *Id.* at 661.

On appeal, we explained that, "[i]f this were a typical case . . . looking simply at whether court records should be sealed," we would have held that the district court should have considered the *Hubbard* factors (which it had failed to do). *Id.* at 666. We found, however, that this was not a case about "whether court records should be sealed." *Id.* "Rather, the question before us [was] more properly posed as whether the FEC has the authority to file information concerning an ongoing investigation on the public record when it seeks to enforce a subpoena." *Id.* Holding that the Federal Election Campaign Act and FEC regulations "plainly prohibit the FEC from" making such a disclosure, we "conclud[ed] that the FEC failed to act in accordance with law" when it filed "the subpoena enforcement action on the public docket." *Id.* at 667.

---

rules, unlike § 5322(d)(5), expressly govern the federal courts. *See* FED. R. CRIM. P. 1(a)(1).

In short, *Sealed Case* does not stand for the broad proposition that whenever a statute commands an agency to keep materials confidential, the statute bars courts from applying the *Hubbard* analysis when considering whether to unseal those materials.  It held only that the FEC violated the Campaign Act and FEC regulations by unilaterally filing the information on the public record, and that such agency action had to be overturned. *Sealed Case* did not reach the *Hubbard* issue, other than to say that the statutory and regulatory scheme in that case "create[d] an extraordinarily strong privacy interest in keeping the records sealed[,] . . . [s]o strong . . . that only rarely, if ever, might the remaining five *Hubbard* factors counterbalance the strength of the privacy interests asserted."  *Id.* at 666 (internal quotation marks and alterations omitted).[15]

In the case now before us, FSOC -- unlike the FEC in *Sealed Case* -- did not violate its governing statute.  Rather, it consistently joined MetLife's efforts to seal the relevant records.  Per *Sealed Case*, then, this case presents only the "typical" question of whether a court should unseal those records -- a question governed by *Hubbard*.  *See id.*

MetLife further maintains that Congress drafted § 5322(d)(5)(A) against the backdrop of *Sealed Case*, and that it therefore must have intended that provision to limit courts as well as FSOC.  Oral Arg. Recording at 36:32-38.  There is no legislative history to support that claim and no evidence that Congress construed the case as MetLife does, rather than as we do.  Nor is there any evidence that Congress was aware of the

---

[15] The court noted that, under the provisions of the Campaign Act relating to pending investigations, "secrecy is vital to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation."  *In re Sealed Case*, 237 F.3d at 667 (internal quotation marks omitted).

case at all. If Congress were aware of any law on this subject, we expect it would have been the longstanding common-law right of public access to judicial records -- a right that "antedates the Constitution," *El-Sayegh*, 131 F.3d at 161, and is enshrined in a series of cases in the Supreme Court, this court, and each of the other circuits.[16] Thus, if any canon of construction applies, it is that "[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)). No such purpose is evident in the Dodd-Frank Act.

C

In sum, we conclude that Dodd-Frank does not displace the common-law right of public access to judicial records, or the *Hubbard* test that courts in this Circuit apply when asked to seal or unseal such records.

Our conclusion is further confirmed by considering the logical consequence that would result from instead adopting the appellees' position. As both MetLife and FSOC forthrightly acknowledged at oral argument, accepting their view would also require a court to redact portions of its own opinion that discuss data or information submitted by a company to the Council -- even key applications of law to fact. Oral Arg. Recording at 41:51-42:05 (MetLife); *id.* at 43:33-44:36 (MetLife); *id.* at 48:10-31 (FSOC). That requirement would be categorical:

---

[16] *See Nixon*, 435 U.S. 589; *Hubbard*, 650 F.2d 293; cases cited *supra* note 13; *cf. Dixon v. United States*, 548 U.S. 1, 13-14 (2006) ("[W]e can safely assume that . . . Congress was familiar with . . . the long-established common-law rule . . . .").

redaction would be mandatory, without the balancing contemplated by *Hubbard*, and without regard for how central the redacted material is to explaining the opinion's rationale. *Id.* at 41:05-42:05 (acknowledgment by MetLife that redaction would be required, even if the public could not understand an opinion without reference to the redacted information).[17] Such a requirement would contradict a fundamental norm of our judicial system: that judges' decisions and their rationales must be available to the public. *See Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) ("Judges deliberate in private but issue public decisions after public arguments based on public records."). We would not expect Congress to upset such a norm without saying so.[18]

V

Because the common-law right of public access applies to the briefs and appendix filed in this case, and because Dodd-Frank does not supersede that right, the district court was required to apply the *Hubbard* test in resolving Better Markets' motion to unseal the redacted portions of those documents. The court did state that it had "reviewed the record and all of the

---

[17] We recognize that the district court's opinion in this case contains no redactions, and that MetLife and FSOC voluntarily strove to redact as little as they thought possible from their briefs and appendices. *See MetLife*, 2016 WL 3024015, at *6 (noting that "the parties have been entirely forthcoming, even volunteering to lift redactions previously made"). But the decision we reach today will apply not only to this case, but also to future cases in which the relevant players may be less diligent or conscientious than those involved here.

[18] We take no position on the extent to which Congress could constitutionally mandate the sealing of judicial records or opinions. We conclude only that § 5322(d)(5) does not embody such a mandate.

briefs . . . and [found] that large parts of the administrative record and the briefs should be redacted from public view." *MetLife*, 2016 WL 3024015, at *6. In context, however, it is clear that the court's finding was based not on an application of *Hubbard*, but rather on its conclusion that Dodd-Frank "supersedes the multi-factor inquiry prescribed by [the court] in *Hubbard*." *Id.* at *5.[19]

We therefore remand the case to the district court to apply the *Hubbard* analysis. Remanding is our normal course when a district court does not adequately articulate its reasons for sealing judicial records. *See, e.g.*, *Primas*, 719 F.3d at 699; *Nat'l Children's Ctr.*, 98 F.3d at 1410; *Johnson*, 951 F.2d at 1277-78. We see no reason to distinguish those cases from this one, where the court did not apply *Hubbard* at all. *See United States v. Peyton*, 745 F.3d 546, 557 (D.C. Cir. 2014) (noting that "[w]e are a court of review, not of first view"). In applying *Hubbard* on remand, the district court must supply its reasoning "with specific reference to the particular documents or group of documents to which each reason is applicable." 650 F.2d at 324. Dodd-Frank's confidentiality provision should weigh heavily in that analysis. Although § 5322(d)(5)(A) does not categorically protect the sealed information, it does represent a congressional judgment about the importance of maintaining the confidentiality of nonpublic information submitted to FSOC. *Cf. In re Sealed Case*, 237 F.3d at 666 (noting that the confidentiality provision of the Federal Election Campaign Act would "create an extraordinarily strong privacy interest in keeping . . . records sealed" under *Hubbard*).

---

[19] *See MetLife*, 2016 WL 3024015, at *4 ("Ordinarily courts apply a six-factor framework to decide whether the public right is overcome by private interest . . . . For the reasons stated below, the Court does not reach that framework in this case.").

Pointing to *Hardaway v. District of Columbia Housing Authority*, MetLife argues that we should apply *Hubbard* on our own accord and conclude that all currently sealed records should remain so. In *Hardaway*, we held that "given the clarity of the issue," we could deviate from our normal practice of remanding and conclude as a matter of law that "the single medical form currently in the record, and all future medical records describing [the plaintiff's] disability, must be sealed." 843 F.3d at 980-81. But whereas *Hardaway* involved a single record document, there are almost two thousand sealed pages in the 16-volume joint appendix in this case. The parties have not even submitted that appendix for our review. And whereas *Hardaway* involved only one category of possible future records -- medical forms describing the plaintiff's disability -- this case involves a diverse array of financial data, some of which may include sensitive business information, some of which may not. Applying *Hubbard* to the records in this case will require a more complex and intensive analysis than was required in *Hardaway*, and the district court is best suited to conduct that analysis given its considerable familiarity with those records.

## VI

For the foregoing reasons, we conclude that the records at issue in this case are judicial records, and that the Dodd-Frank Act does not displace the common-law right of public access to those records. The traditional *Hubbard* balancing test therefore governs the question of whether to unseal them. Because the district court is best positioned to undertake that inquiry in the first instance, the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*