# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 25, 2019          Decided July 7, 2020

No. 18-5276

IN RE: IN THE MATTER OF THE APPLICATION OF JASON
LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE
APPLICATIONS AND ORDERS,

JASON LEOPOLD AND REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS,
APPELLANTS

v.

UNITED STATES OF AMERICA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-mc-00712)

*Katie Townsend* argued the cause for appellants. With her
on the briefs was *Jeffrey Light*.

*Christopher T. Bavitz* was on the brief for *amici curiae*
Former United States Magistrate Judges in support of petitioners
and reversal.

*Laura R. Handman*, *Kurt A. Wimmer*, *Bruce W. Sanford*,

*Mark I. Bailen*, and *David McCraw* were on the brief for *amici curiae* Media Organizations in support of appellants.

*Charles S. Sims* was on the brief for *amici curiae* First and Fourth Amendment Scholars in support of petitioners-appellants and in support of reversal.

*Aaron D. Mackey* was on the brief for *amici curiae* Electronic Frontier Foundation and Riana Pfefferkorn in support of petitioners-appellants.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen Kolb*, and *Pamela S. Satterfield*, Assistant U.S. Attorneys.

Before: TATEL and GARLAND, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Journalist Jason Leopold and the Reporters Committee for Freedom of the Press applied to the district court to unseal certain electronic surveillance orders and related filings in closed investigations. The district court Clerk's Office, the U.S. Attorney's Office, and the applicants were able to reach accommodations regarding some of the applicants' requests. Although the district court determined that the documents are judicial records subject to the common-law right of public access, it denied the remaining requests due to the administrative burden of unsealing.

The public's right of access to judicial records is a fundamental element of the rule of law. Administrative burden is relevant to *how* and *when* a judicial record may be unsealed,

but not to *whether* it may be released at all. We therefore reverse the judgment and remand the case for further proceedings.

I

A

This case involves three kinds of court orders authorizing electronic surveillance: judicial warrants issued pursuant to the Stored Communications Act (SCA), court orders issued pursuant to § 2703(d) of that Act, and court orders issued pursuant to the Pen Register Act.

SCA warrants can be used to compel "the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication[] that is in electronic storage" for 180 days or less. 18 U.S.C. § 2703(a). SCA warrants can also be used to compel the disclosure by a provider of remote computing service of "the contents of [specified] wire or electronic communication[s]" without notice to the subscriber, or to compel "a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to" a subscriber. *Id.* § 2703(b)(1)(A), (c)(1).[1] In federal court, the government may obtain an SCA warrant "using the procedures described in the Federal Rules of Criminal Procedure." *Id.* § 2703(a), (b)(1)(A), (c)(1)(A). A law enforcement officer or attorney must submit an affidavit or other information to a magistrate judge, and the

---

[1] The intricacies of the SCA's coverage are not relevant here. For a helpful description, see Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1213-20 (2004).

judge must issue the warrant if there is probable cause. FED. R. CRIM. P. 41(d).

SCA § 2703(d) orders can be used to access, with notice to the subscriber, the contents of specified wire or electronic communications held by a remote computing service or, without notice, subscriber records held by an electronic communication or remote computing service. 18 U.S.C. § 2703(b)(1)(B)(ii), (c)(1)(B), (c)(3). Under the statute, the government can obtain a § 2703(d) order from a court by offering "specific and articulable facts showing that there are reasonable grounds to believe" the records or information sought "are relevant and material to an ongoing criminal investigation." *Id.* § 2703(d).[2]

Pen register orders authorize law enforcement to install pen registers and trap-and-trace devices. Pen registers capture outgoing metadata; trap-and-trace devices capture incoming metadata. *See* 18 U.S.C. § 3127(3), (4). Collectively, they tell the government such things as what number a person dialed, what address a person was emailed from, and when someone sent a text. They do not capture the contents of those messages.

---

[2] The Supreme Court has held, under the Fourth Amendment, that a § 2703(d) order "is not a permissible mechanism for accessing" historical cell-site location information. *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018). Before compelling a wireless carrier to turn over that information, the government generally must "get a warrant" supported by probable cause. *Id.* The Sixth Circuit has similarly held that the Fourth Amendment bars the government from compelling a commercial internet service provider "to turn over the contents of a subscriber's emails without first obtaining a warrant based on probable cause." *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010); *see also* H.R. REP. NO. 114-528, at 9 (2016) (noting that, soon after the *Warshak* decision, the Department of Justice began using warrants for email in all criminal cases, and that this "practice became Department policy in 2013").

To obtain a pen register order, a government attorney must certify "that the information likely to be obtained is relevant to an ongoing criminal investigation." *Id.* § 3122(b)(2). A court must issue the order if it finds that the appropriate certification has been made. *Id.* § 3123(a)(1).

SCA warrants, SCA § 2703(d) orders, and pen register orders allow law enforcement to collect different kinds of electronic information. But the mechanics of their authorization are similar: the government submits an application, and a court issues an order granting or denying the application. Thus, all three generate similar records that are filed in the court: the application (and supporting documents) filed by the government, the order issued by the court, and the court clerk's docket entries. Heretofore, the United States District Court for the District of Columbia has routinely maintained all of those materials under seal. *In re Application of Leopold* (*Leopold II*), 327 F. Supp. 3d 1, 5 (D.D.C. 2018).

B

In July 2013, Jason Leopold, an investigative reporter now with BuzzFeed News, applied to the district court for an order unsealing some of those materials. In August 2016, the Reporters Committee for Freedom of the Press successfully moved to intervene. Retrospectively -- that is, with respect to past filings -- the Reporters Committee sought to unseal applications, supporting documents, and court orders for SCA warrants, SCA § 2703(d) orders, and pen register orders in closed investigations. Reporters Committee Appl. 1 (J.A. 34). Prospectively -- that is, with respect to future filings -- the Reporters Committee sought access to the court (typically, magistrate court) docket sheets for those materials, as well as the eventual unsealing of the underlying materials themselves. *Id.* at 1-2 (J.A. 34-35). The applicants argued that "[t]he press and

the public have a particularly powerful interest in obtaining access to court documents concerning judicial authorization for the use of [those] law enforcement tools . . . . [J]udicial oversight and, in turn, public oversight of the judicial process, is necessary to guard against government overreach." *Id.* at 2 (J.A. 35).

The applicants and the U.S. Attorney's Office, "with guidance from [the district] Court, engaged in discussions on how properly to vindicate, in light of substantial law enforcement investigative and individual privacy concerns, the public's interest in transparency of judicial records concerning the government's use of statutorily authorized investigative tools." *Leopold II*, 327 F. Supp. 3d at 6. The government acknowledged "that applications and orders relating to electronic surveillance methods need not necessarily be permanently sealed," and it released some information. *In re Application of Leopold* (*Leopold I*), 300 F. Supp. 3d 61, 68, 71 (D.D.C. 2018) (quoting Gov't Resp. 2). The applicants "clarified that the petition sought no personally identifying information concerning investigative targets," *id.* at 69, and narrowed their requests. From the record, this case appears to be marked by remarkable good faith and accommodation. Guided by the district court, the applicants, the U.S. Attorney's Office, and the district court Clerk's Office took meaningful steps to improve transparency in this district. We applaud the district court for its effective work in moving the process forward.

With respect to past filings, the applicants ultimately received: (1) information about the total number of electronic surveillance applications and more specifics about pen register orders, including basic docket information, for a nine-year period; (2) certain details that the government "extracted" from the files of 10% of pen register matters; and (3) the unsealing

(with redactions) of four "sample" pen register applications and orders. *Id.* at 100.

With respect to future filings, the Clerk's Office and the U.S. Attorney's Office entered into a Memorandum of Understanding. Pursuant to the memorandum, the latter can now electronically file pen register and SCA § 2703(d) applications, which are docketed in a standardized format. *Id.* at 103-04 & n.37. The dockets are not made available to the public. Instead, the Clerk's Office generates semiannual reports listing docket numbers, case captions, and certain other docket information on a six-month delay. *Id.* at 104 n.36.

Despite this admirable cooperation, the parties eventually reached an impasse. Regarding past filings, the applicants still sought basic docket information for SCA § 2703(d) matters and specified details to be extracted from 100% of pen register matters filed by the U.S. Attorney's Office since 2008 -- both involving closed investigations only. Proposed Order 4-5 (J.A. 848-49). The applicants no longer sought any of the actual documents or any retrospective relief whatsoever with respect to SCA warrants. Regarding future filings, they requested real-time access to basic docket information, as well as the presumptive unsealing at the close of investigations of applications (and supporting documents), orders, and docket entries for SCA warrants, SCA § 2703(d) orders, and pen register orders. *Id.* at 2-3, 5-8 (J.A. 846-47, 849-52); *see* Leopold Br. 3.

The district court denied additional relief and later denied reconsideration. *See Leopold I*, 300 F. Supp. 3d 61; *Leopold II*, 327 F. Supp. 3d 1. The court began by rejecting the applicants' contention that the First Amendment requires public access to the requested materials, holding that the applicants had failed to show that there was a "tradition of openness" with respect to

those materials, as required by the case law. *Leopold I*, 300 F. Supp. 3d at 91 (citing *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011)).

The district court then went on to address the applicants' contention that they have a common-law right of access to the same materials. After concluding that each of the three categories of documents at issue are "judicial records," the court applied this circuit's six-factor *Hubbard* balancing test for unsealing judicial records. *Id.* at 92-97 (citing *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980)); *see infra* Part II.C (describing the *Hubbard* factors). The court found that the *Hubbard* factors weighed in favor of access. *Leopold II*, 327 F. Supp. 3d at 22. Nonetheless, it held that the "significant administrative burden" of unsealing justified denial of any access at all to past filings, and to anything more than "limited information" contained in future filings. *Id.* at 5, 21; *see id.* at 7, 22; *Leopold I*, 300 F. Supp. 3d at 97. The court further held that the applicants had forfeited their request for real-time access to docket information. *Leopold I*, 300 F. Supp. 3d at 106.

The applicants now appeal the denial of their requests for additional relief. In this court, they acknowledge that they forfeited their request for real-time docket information, Recording of Oral Arg. at 9:15-9:23, and emphasize that their appeal only involves materials from closed investigations, *id.* at 9:42-9:54. In brief, the applicants still seek three things: (1) retrospectively, basic docket information for all SCA § 2703(d) matters filed from 2008 to the present; (2) retrospectively, specified details to be extracted from 100% of pen register matters filed from 2008 to the present; and (3) prospectively, the presumptive unsealing at the close of investigations of applications (and supporting documents), orders, and docket entries for SCA warrants, SCA § 2703(d)

orders, and pen register orders. *See id.* at 9:42-9:54, 9:15-9:23; Proposed Order 2-3, 5-8 (J.A. 846-47, 849-52).

The applicants appeal the district court's decision on both First Amendment and common-law grounds. We reach only the latter. The applicants indicated at oral argument that they believe they can receive all of the relief they request under the common law. Recording of Oral Arg. at 22:05-22:20. In light of the result we reach with respect to the common law, we avoid unnecessarily passing on a constitutional question of first impression in this circuit. This approach accords with the "fundamental and longstanding principle of judicial restraint," which "requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)).

II

The common-law right of public access to judicial records "is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). At bottom, it reflects the antipathy of a democratic country to the notion of "secret law," inaccessible to those who are governed by that law. The right "antedates the Constitution," *id.* at 674 (quoting *United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997)), and has been recognized by this court since at least 1894, *see Ex parte Drawbaugh*, 2 App. D.C. 404, 407-08 (1894).

In 1978, the Supreme Court held it was "clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records

and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted). In 1980, in *United States v. Hubbard*, our court likewise noted "this country's common law tradition of public access to records of a judicial proceeding," stressing that "[a]ccess to records serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." 650 F.2d at 314-15. "Like the First Amendment," we explained, "the right of inspection serves to produce an informed and enlightened public opinion. Like the public trial guarantee of the Sixth Amendment, the right serves to safeguard against any attempt to employ our courts as instruments of persecution, to promote the search for truth, and to assure confidence in judicial remedies." *Id.* at 315 n.79 (internal quotation marks and alteration omitted).[3]

In light of these considerations, there is a "strong presumption in favor of public access to judicial proceedings," including judicial records. *Id.* at 317; *see MetLife*, 865 F.3d at 663. In some cases, that presumption may be outweighed by competing interests. In *Hubbard*, we identified such interests, 650 F.2d at 317-22, and subsequent cases crafted them into a six-factor test, *see infra* Part II.C & note 9. The "*Hubbard* test has consistently served as our lodestar" for evaluating motions to seal or unseal judicial records "because it ensures that we fully account for the various public and private interests at stake." *MetLife*, 865 F.3d at 666 (collecting cases). And *Hubbard*-like balancing tests are the standard for ruling on

---

[3] *See also Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.) ("[I]t is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.").

motions to seal or unseal judicial records in every circuit. *Id.* at 671 & n.13 (collecting cases).

A

The district court held that all of the materials at issue here are judicial records, *Leopold I*, 300 F. Supp. 3d at 92, a ruling the government does not contest. As we have previously explained, "not all documents filed with courts are judicial records." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013). Rather, "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *Id.* (quoting *El-Sayegh*, 131 F.3d at 163); *see League of Women Voters v. Newby*, No. 19-7027, slip op. at 7 (D.C. Cir. June 26, 2020). We agree with the district court that the materials the applicants seek are judicial records.

As set forth in Part I, the requested materials include three kinds of court orders -- SCA warrants, SCA § 2703(d) orders, and pen register orders, which we collectively refer to as "electronic surveillance orders" -- as well as applications for such orders, their supporting documents, and associated court dockets.[4]

There is no doubt that the court orders themselves are judicial records. Court decisions are the "quintessential business of the public's institutions." *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir.1996). And the issuance of public opinions is core "to the transparency of the court's decisionmaking process." *MetLife*, 865 F.3d at 668. Indeed, since at least the time of Edward III, judicial decisions have been held open for public inspection. 3 EDWARD COKE,

---

[4] We do not consider other kinds of electronic surveillance orders or their related filings.

REPORTS, at iii-iv (London, E. & R. Nutt & R. Gosling 1738) (1602).[5] It is not surprising, therefore, that the only other circuit to have specifically considered SCA § 2703(d) orders has held that they are judicial records. *In re Application of United States* (*Appelbaum*), 707 F.3d 283, 290-91 (4th Cir. 2013).

The same is true of applications for such orders and their supporting documents (e.g., accompanying affidavits). In *MetLife*, we held that appellate briefs and appendices are judicial records because they are "intended to influence" the court and the court "ma[kes] decisions about them." 865 F.3d at 668 (internal quotation marks omitted); *see League of Women Voters*, slip op. at 8. Applications for electronic surveillance orders and their supporting documents are likewise intended to influence the court, and the relevant orders are certainly "decisions about them." Our sister circuits have held that the closest (although not perfect) analogues -- search warrant applications and supporting affidavits -- are judicial records.[6]

---

[5] *See* 3 COKE, *supra*, at iii-iv ("These records . . . are faithfully and safely kept . . . . And yet not so kept but that any subject may for his necessary use and benefit have access thereunto, which was the ancient law of England, and so is declared by an Act of Parliament in [1372]." (capitalization altered)).

[6] *See, e.g.*, *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 (5th Cir. 2017) (holding "that the qualified common law right of access can extend to an individual seeking to access pre-indictment search warrant materials," including, in that case, supporting affidavits); *United States v. Bus. of the Custer Battlefield Museum & Store*, 658 F.3d 1188, 1193 (9th Cir. 2011) (holding that "[a]ffidavits in support of seizure or search warrants . . . clearly fall within the definition of judicial documents" (internal quotation marks omitted)); *In re Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (recognizing that a search warrant application is "a public document subject to a common law right of access"); *Balt. Sun Co. v.*

And the Fourth Circuit has held that "§ 2703(d) motions are 'judicial records' because they [are] filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders." *Appelbaum*, 707 F.3d at 291.

We reach the same conclusion regarding court dockets. Although judges do not always rely upon dockets themselves in reaching decisions, dockets are nonetheless judicial records because they are "created and kept [by courts] for the purpose of memorializing or recording . . . matter[s] of legal significance." *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 905 (D.C. Cir. 1996). In a docket, a judge or clerk "briefly notes all the proceedings and filings in a court case." *Docket*, BLACK'S LAW DICTIONARY (11th ed. 2019). A court case is by definition a "matter of legal significance," and the docket memorializes it. Moreover, dockets provide a "kind of index to judicial proceedings and documents," facilitating public access to the underlying documents. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004). It would make little sense to provide public access to court documents but not to the indices that record them and thus make them accessible.

Accordingly, we agree with the district court that all of the requested materials are judicial records.

---

*Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (holding that "affidavits for search warrants are judicial records"); *cf. Cowles Publ'g Co. v. Murphy*, 637 P.2d 966, 969 (Wash. 1981) ("Access to search warrants and affidavits of probable cause can reveal how the judicial process is conducted. The procedures employed by the prosecutor and law enforcement can be evaluated. Access may also disclose whether the judge is acting as a neutral magistrate.").

B

Having found that the requested materials are judicial records, the district court next concluded that a "common law presumption of access thus attaches . . . , which the government can rebut only by showing competing interests that compel a conclusion that justice requires maintaining a seal. The *Hubbard* factors govern this analysis." *Leopold I*, 300 F. Supp. 3d at 92 (internal quotation marks, alterations, and citations omitted). The government does not dispute this conclusion.

But the common-law inquiry must yield "when Congress has spoken directly to the issue at hand." *MetLife*, 865 F.3d at 669 (quoting *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 937 (D.C. Cir. 2003)). The relevant statute is the Electronic Communications Privacy Act of 1986 (ECPA), Pub. L. No. 99-508, 100 Stat. 1848. The Stored Communications Act is Title II of the ECPA. The Pen Register Act is Title III. We draw different conclusions for SCA warrants and SCA § 2703(d) orders on the one hand, and pen register orders on the other.

The Stored Communications Act authorizes courts to issue SCA warrants and § 2703(d) orders. *See* 18 U.S.C. § 2703. As the government acknowledges, the SCA "does not require the sealing of warrants or § 2703(d) orders and applications in support thereof." Gov't Br. 11. Nor does it mention sealing at all. It does authorize the government to seek a separate order prohibiting the service provider from notifying anyone about the electronic surveillance order, "for such period as the court deems appropriate" to protect specified law enforcement interests in connection with ongoing investigations. 18 U.S.C. § 2705(b). But because, as the government agrees, the SCA contains no "default sealing or nondisclosure provisions," Gov't Br. 28, "Congress has [not] spoken directly to the issue at hand," and the common-law rule applies, *MetLife*, 865 F.3d at 669

(quoting *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 937). *See Appelbaum*, 707 F.3d at 291 (holding that, because "§ 2703(d) orders are 'judicial records,' the common law presumption of access attaches to these documents").

The Pen Register Act, however, is different. It provides that a pen register order "shall direct that . . . the order be sealed until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1). By expressly directing sealing *until* the court orders otherwise, Congress has displaced the usual presumption in favor of access. Nonetheless, the Act does not *require* that pen register orders be sealed, and by authorizing the court to order otherwise, Congress plainly contemplated that unsealing may occur. Moreover, because Congress did not specify a standard for making the unsealing determination, it did not displace the common-law standard enshrined in the *Hubbard* balancing test. A contrary conclusion would contradict "a fundamental norm of our judicial system: that judges' decisions and their rationales must be available to the public. We would not expect Congress to upset such a norm without saying so." *MetLife*, 865 F.3d at 675 (citation omitted).[7]

---

[7] As this court has previously noted, the Pen Register Act's sealing provision refers only to pen register *orders*; it says nothing about applications, supporting documents, or dockets. *See Labow v. DOJ*, 831 F.3d 523, 528 (D.C. Cir. 2016) (citing 18 U.S.C. § 3123(d)(1)). In *Labow*, we held that the Pen Register Act was a qualifying statute under Exemption 3 of the Freedom of Information Act because it "specifically exempted" such orders from disclosure, *id.* at 527 (quoting 5 U.S.C. § 552(b)(3)(A)), but we found it unnecessary to address whether the Pen Register Act "authorizes withholding documents other than a pen register order," *id.* at 528. Similarly, we need not decide today whether the Act displaces the usual presumption in favor of access to pen register materials other than the orders themselves, because we think it unlikely that -- even with different presumptions -- the district court will find that the *Hubbard* test yields

A useful comparison is to Federal Rule of Criminal Procedure 6(e)(6), which provides that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Unlike the Stored Communications Act, the Rule expressly directs secrecy as the default position, and thus displaces the common-law right of access. *See In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998). And unlike the Pen Register Act, Rule 6(e)(6) also specifies a standard for sealing -- "as long as necessary to prevent the unauthorized disclosure of a matter occurring before the grand jury." That standard is different from the interests balanced in the *Hubbard* test, and hence displaces that test as well.[8]

In sum, with respect to SCA materials, we conclude that Congress displaced neither the common-law presumption of access nor the *Hubbard* test for making unsealing decisions. With respect to pen register orders, we conclude that Congress did displace the presumption, but did not displace the *Hubbard*

---

a different result for pen register orders than for their supporting materials.

[8] Another comparison is to the Wiretap Act, which as amended is contained in Title I of the ECPA. The Wiretap Act states: "Applications made and orders granted under this chapter *shall be sealed* by the judge. . . . Such applications and orders *shall be disclosed only upon a showing of good cause* before a judge of competent jurisdiction . . . ." 18 U.S.C. § 2518(8)(b) (emphases added). Although we do not address wiretap orders in this opinion, we note that the Second Circuit has held that this provision creates a "categorical presumption *against* disclosure." *In re Application of N.Y. Times Co.*, 577 F.3d 401, 407 n.3 (2d Cir. 2009). We also note that, unlike the Pen Register Act but like Rule 6(e)(6), the Wiretap Act establishes its own standard for unsealing: "good cause."

test as the standard for unsealing.  Therefore, when faced with a request to unseal either kind of material, the district court should apply the traditional *Hubbard* balancing test -- albeit without a thumb on the scale in the case of pen register orders.

C

Having concluded that the documents sought by the applicants are judicial records to which the *Hubbard* test applies, we now address the applicants' principal challenge to the manner in which the district court applied that test:  the court's determination not to unseal the records because of the administrative burden required.

Under the *Hubbard* test, a "seal may be maintained only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires.'" *MetLife*, 865 F.3d at 665-66 (quoting *In re NBC*, 653 F.2d 609, 613 (D.C. Cir. 1981)).  We review the decision to seal or unseal for abuse of discretion.  *El-Sayegh*, 131 F.3d at 160.  "Whether the lower court applied the proper legal standard in exercising [its] discretion, however, is a question of law reviewed de novo." *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003).

The *Hubbard* test requires a district court to weigh the following six factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted;

(5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*MetLife*, 865 F.3d at 665 (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409).[9]

In this case, the district court found that those factors weighed in favor of the applicants' retrospective access to the information they seek and that five of the six factors weighed in favor of disclosure on a prospective basis. *Leopold I*, 300 F. Supp. 3d at 97.[10] In so holding, the court emphasized that "[t]he limited scope of the [applicants'] claim is significant -- [they] seek access only to . . . materials from closed criminal investigations, and only to those portions of such materials that do not reveal personally identifying information." *Id.* at 91. "As such," the court explained, "the USAO [U.S. Attorney's Office] does not contend that disclosure would impede an ongoing criminal investigation or reveal information that would impinge on personal privacy." *Id.*

---

[9] This court has repeatedly held that those are the factors a court should weigh in ruling on a motion to seal or unseal a judicial record. *See MetLife*, 865 F.3d at 665; *Hardaway v. D.C. Housing Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016); *Primas v. District of Columbia*, 719 F.3d 693, 698-99 (D.C. Cir. 2013); *In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001); *Nat'l Children's Ctr.*, 98 F.3d at 1409; *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 & n.14 (D.C. Cir. 1991).

[10] The only one of the six factors that the court found to weigh against disclosure was "the extent of previous public access to the documents." *Leopold I*, 300 F. Supp. 3d at 94-95.

Nonetheless, the court held that there is *no* right of access *at all* to previously filed materials, "in consideration of the significant administrative burdens that retrospective disclosure would impose on the Clerk's Office and USAO." *Id.* at 108. As for future filings, the court recognized only "a limited prospective right of access to certain information" contained in the filings, but not to the filings themselves. *Leopold II*, 327 F. Supp. 3d at 22. The district court held that "significant administrative burden" defeats any right of access beyond that afforded by the Memorandum of Understanding between the Clerk's and U.S. Attorney's Offices -- to which the applicants were not parties. *Id.* at 21; *Leopold I*, 300 F. Supp. 3d at 105 n.38. Pursuant to that memorandum, the Clerk's Office generates semiannual reports that list docket numbers, case captions, and certain other information. *Leopold I*, 300 F. Supp. 3d at 104 n.36. The reports are not the court dockets themselves and do not indicate whether an application for a warrant or order was granted or denied. *See, e.g.*, Mot. for Judicial Notice Ex. B, Attach. A.

"[U]nder *Hubbard*," the district court said, "a court may consider administrative burden in deciding whether to recognize any right of access in the first place, not [just] that such a right of access exists but nonetheless gives way to countervailing considerations." *Leopold II*, 327 F. Supp. 3d at 27. A "court may conclude that no asserted common law right of access exists in the first place where recognizing such right of access would impose undue administrative burdens." *Id.* The government does not defend that conclusion.

*Hubbard* does not resolve the question before us. Administrative burden is not one of the factors listed in the *Hubbard* test, which we adopted to "fully account for the various public and private interests at stake" in sealing or unsealing judicial records. *MetLife*, 865 F.3d at 666. In

concluding that administrative burden is a permissible factor, the district court relied upon *Hubbard*'s further statement that a court may consider "particularized privacy *or other* interests" offered by the party opposing unsealing. *Leopold II*, 327 F. Supp. 3d at 27 (quoting *Hubbard*, 650 F.2d at 323). That phrase is not included in any of this circuit's subsequent lists of the relevant factors -- the closest of which (as quoted above) is "the strength of any property and privacy interests asserted." *MetLife*, 865 F.3d at 665 (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409); *see supra* note 9 (collecting cases).

Nor did *Hubbard* itself mention administrative burden as a "particularized . . . other interest," discussing instead only "types of particularized *privacy* interests." 650 F.2d at 323, 324 (emphasis added). Moreover, it used the term "particularized" to describe "reasons based on the documents' *contents* which might have been thought by the trial judge to justify his unsealing order" with respect to those particular documents. *Hubbard* did not use the term to describe reasons for sealing entire categories of past and future filings. *Id.* at 322.[11]

---

[11] *See, e.g.*, *Hubbard*, 650 F.2d at 318 n.99 ("We treat the question whether public access should be granted to particular documents which have already entered the public domain through other channels under our discussion of the 'particularized interests' at stake."); *id.* at 323 n.116 ("[T]he potential for prejudice inherent in the documents' release must be assessed with specific reference to the documents' contents. The possibility of prejudice is thus another 'particularized' interest which may be asserted to deny public access."); *id.* at 324 (providing that the parties should be given the chance to "articulate any particularized privacy interest they wish to assert with respect to a document that is to be released"); *see also MetLife*, 865 F.3d at 665 (requiring consideration of "the relevant facts and circumstances *of the particular case*" (emphasis added) (internal quotation marks omitted)).

*In re Sealed Case*, in which we recognized that "administrative burdens [can] justif[y] the denial of across-the-board docketing" of grand jury ancillary proceedings, is not to the contrary. 199 F.3d 522, 527 (D.C. Cir. 2000). As we explained there, "the grand jury context is unique. It is because of their unique status that grand jury processes are not amenable to the practices and procedures employed in connection with other judicial proceedings." *Id.* at 526. Indeed, as we noted above, Federal Rule of Criminal Procedure 6(e)(6) provides that records "relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." That Rule expressly makes secrecy the default and thus displaces the common-law right of access. *See Dow Jones*, 142 F.3d at 504; *supra* Part II.B.

This is not to say that administrative burden is irrelevant in a court's consideration of a motion to unseal judicial records. Here, for example, the district court did not point to burden as something that it simply would rather not impose on the government and Clerk's Office. Rather, it pointed to burden as a concern related to other factors that are expressly recognized in the *Hubbard* test: namely, preventing prejudice to open investigations and protecting privacy interests. *See MetLife*, 865 F.3d at 665. As the district court explained, it declined to recognize a retrospective right of access "in light of the considerable administrative burden that such extensive unsealing . . . would impose on the USAO and the Clerk's Office, due to the necessity of identifying, reviewing and redacting sensitive law enforcement and privacy-protected information from any unsealed records." *Leopold II*, 327 F. Supp. 3d at 7.

The applicants recognize these concerns. In the district court, they accepted information extracted from pen register orders, rather than insisting on release of the orders themselves,

in order to minimize the risk of "inadvertent disclosure" that could occur even with redaction. *Leopold I*, 300 F. Supp. 3d at 77. At oral argument, they acknowledged that the government and court must be able to redact documents in order to protect privacy and law enforcement interests. Recording of Oral Arg. at 11:25-11:46. And we do not understand them to take issue with the suggestion, raised at oral argument, that the district court can generally leave it to the government to decide in good faith when investigations are truly closed, taking into account related cases that could be damaged by premature disclosure of surveillance and particular difficulties that could arise if the lawyers involved have left the government. *Id.* at 51:38-52:44. The applicants may argue about the application of those concerns to individual documents, but they accept their importance.

It is undisputed, then, that in considering the legitimate interests identified in *Hubbard*, a court may reasonably find that the administrative burden of protecting those interests should affect the manner or timing of unsealing. As the district court said, the Clerk's Office cannot simply press "print" and unseal docket information that might jeopardize personal privacy or ongoing investigations. *Leopold I*, 300 F. Supp. 3d at 98. The applicants cannot and do not expect the U.S. Attorney's and Clerk's Offices to disclose records without redactions or to drop everything and make unsealing their top priority.

But although administrative burden is relevant to how and when documents are released, it does not justify precluding release forever. The records at issue here are not nailed into a nondescript crate, stored deep in a sprawling, uncataloged warehouse. *Cf.* RAIDERS OF THE LOST ARK (Lucasfilm Ltd. 1981). Production may be time-consuming, but time-consuming is not the same thing as impossible.

For example, the district court denied the applicants' request for additional information from past pen register filings because it would "divert significant amounts of valuable [Assistant U.S. Attorney] time and resources." *Leopold I*, 300 F. Supp. 3d at 98. Based on the government's previous extraction of the same information for 10% of pen register matters, the court estimated that extracting information for the remaining matters would take -- at the high end -- "nearly twenty 40-hour work weeks." *Id.*[12] Twenty 40-hour work weeks is not an insubstantial amount of time. But for five people, extraction would take only four weeks. Over two years, that becomes only two weeks per year. Although we do not denigrate the substantial amount of work involved, which will undoubtedly take people away from other important tasks, at some point the work becomes spread out over enough people and enough time that the burden is minimized.

Treating administrative burden as dispositive with regard to public access to judicial records would also lead to unacceptable differences between districts. The number of electronic surveillance orders of different kinds varies substantially between judicial districts.[13] If burden were dispositive, judicial

---

[12] Similarly, the court cited administrative burden in denying the applicants's request for basic docket information from past SCA § 2703(d) filings, essentially the same kind of information the court had previously released regarding pen register matters. The court noted that providing the pen register information had taken "several Court and Clerk's Office personnel days to complete," and that providing similar information regarding § 2703(d) materials was likely to take even more time. *Leopold I*, 300 F. Supp. 3d at 99.

[13] *Cf.* U.S. Courts, *Wire A1* (Dec. 31, 2018), https://www.uscourts.gov/statistics/table/wire-a1/wiretap/2018/12/31; *see* 18 U.S.C. § 2519(1).

records of precisely the same kind could be publicly accessible in some districts and not others.

Nor would this result be limited to interdistrict variances. If administrative burden could justify the permanent sealing of electronic surveillance orders, there would be no basis for failing to extend that holding to the many other kinds of sensitive filings in the general dockets of district judges. Hence, the same documents could be publicly accessible not only in some courts and not others, but also in the dockets of judges with fewer such filings and not in those with many more, even in the same court. That result would also be unacceptable. Obtaining access may take longer from a district or judge with a larger number of orders than another, but at the end of the day (or many days), the same kind of record should be accessible from both.

Accordingly, in our judgment, the burden of producing judicial records may not permanently foreclose their unsealing.

III

Providing public access to judicial records is the duty and responsibility of the Judicial Branch.[14] Precluding public access because of the personnel-hours required to produce those records is no more warranted than precluding public access to high-profile trials because of the costs of crowd control. Administrative burden, when taken into consideration as necessary to protect other relevant interests, may affect how and when judicial records may be released. But it is not dispositive of whether judicial records may be released at all.

---

[14] This is not to suggest that the administrative burden must fall entirely on court personnel. Redaction, for example, is a task best undertaken (or at least proposed) by the governmental entity that submitted the surveillance application in the first place.

The district court has already taken important steps to increase the transparency of filings related to the electronic surveillance orders at issue on this appeal. We remand the case to that court to determine, in its sound discretion, how and when greater access can be provided.[15]

*Reversed and remanded.*

---

[15] We are fully aware that the current coronavirus pandemic has imposed -- and will continue to impose -- enormous burdens on the normal operations of the Clerk's Office and U.S. Attorney's Office. Needless to say, the district court may take those burdens into account in determining "how and when" greater access can be provided.