**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2290
_____

STACEY WATSON,
                                        Appellant

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:21-cv-20303)
District Judge:  Honorable Zahid N. Quraishi
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 22, 2025
Before:  BIBAS, FREEMAN, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: May 8, 2025)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Stacy Watson, proceeding pro se, appeals from an order granting the Government's motion for summary judgment in an action challenging the denial of an I-130 petition. For the following reasons, we will affirm.

Watson, a United States citizen, filed an I-130 petition on behalf of her husband, K.S., who is a citizen of India.[1] The United States Citizenship and Immigration Services (USCIS) denied the petition pursuant to 8 U.S.C. § 1154(c), concluding that K.S. had entered into a prior marriage for the purpose of evading the immigration laws. Watson appealed, and the Board of Immigration Appeals dismissed the appeal, agreeing that the record contained substantial and probative evidence that K.S.'s prior marriage was fraudulent.

Next, Watson filed a petition for review in this Court. We determined that we lacked jurisdiction because the BIA's order, which effectively affirmed the denial of an I-130 petition, was not a final order of removal. See Ruiz v. Mukasey, 552 F.3d 269, 273 (2d Cir.2009) (noting dismissal of petition for review of I-130 denial for "lack [of] jurisdiction"). In the interests of justice, we transferred the petition for review to the United States District Court for the District of New Jersey under 28 U.S.C § 1631. See Watson v. Attorney General United States, C.A. No. 21-2977 (order entered Dec. 2,

---

[1] An I-130 petition is the first step in the process by which a United States citizen helps an eligible family member adjust status to lawful permanent resident. See Robinson v. Napolitano, 554 F.3d 358, 361 (3d Cir. 2009).

2

2021); see also Chehazeh v. Att'y Gen., 666 F.3d 118, 139 (3d Cir. 2012) (holding that District Courts have jurisdiction under the Administrative Procedure Act (APA) to review BIA decisions other than a final order of removal).

In the transferred proceedings, Watson primarily argued that the I-130 petition should have been approved because she demonstrated "extreme hardship" based on her permanent disability, her anxiety disorders, and her need for K.S. to help raise their minor child. The Government filed a motion for summary judgment, arguing that the District Court could not consider the extreme hardship argument because it was neither raised by Watson in the immigration proceedings nor considered by the Board. The Government also asserted that the Board's marriage fraud conclusion was not arbitrary or capricious, and that neither USCIS nor the BIA abused its discretion. The District Court granted the summary judgment motion, essentially for the reasons put forth by the Government.[2] Watson timely appealed.[3]

---

[2] The District Court also granted the Government's motion to seal the record, agreeing that the "voluminous record . . . contains private identifying familial and financial information of minors and nonparties, as well as medical records of [Watson]." (ECF 58, at 9.) Watson has not challenged that determination, and there appears to be no abuse of discretion in the District Court's decision to seal the record. See In re Leopold to Unseal Certain Elec. Surveillance Applications and Orders, 964 F.3d 1121, 1131 (D.C. Cir. 2020).

[3] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a District Court's grant of summary judgment in actions brought under the APA and apply the same standard that the District Court applied to "the underlying agency decision." Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 305 (3d Cir. 2013) (internal quotation marks omitted). Under the APA, a reviewing court must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review . . . is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). Relatedly, "[i]t is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review." Nuclear Energy Inst., Inc. v. EPA, 373 F.3d 1251, 1297 (D.C. Cir. 2004) (per curiam) (citation omitted).

Watson argued before the agency that her I-130 petition should be granted because K.S.'s prior marriage was not fraudulent. But in the complaint filed in the District Court, Watson asserted that the I-130 petition should have been approved because she demonstrated extreme hardship. Because the extreme hardship claim was not raised before the agency, the District Court properly refused to consider it. Nuclear Energy

4

Inst., 373 F.3d at 1297. And even if it had been raised before the agency,[4] Watson would not be entitled to relief. The "extreme hardship" provision upon which Watson relied, 8 C.F.R. § 1240.58, applies to a noncitizen's eligibility for suspension of deportation, not to adjustment of status. Because K.S. was not in deportation or removal proceedings, § 1240.58 is inapplicable.

In addition, the District Court did not err in finding that there was nothing arbitrary or capricious in the Board's determination that "the record, when viewed in its totality, contains substantial and probative evidence that [K.S.'s] prior marriage to his spouse was fraudulent." When a United States citizen marries a noncitizen, the citizen can petition for lawful permanent residency for their spouse by filing an I-130 petition. See 8 U.S.C. §§ 1151, 1154; 8 C.F.R. § 204.1(a)(1). But the agency must not approve an I-130 petition for a beneficiary who previously sought lawful status through "a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c); Eid v. Thompson, 740 F.3d 118, 127 (3d Cir. 2014) ("Once the Government determines that it has accorded a mock marriage the benefit requested in an I–130 Petition, or even that the benefit is sought by that marriage,

---

[4] Although Watson submitted to the agency documents pertaining to her alleged hardships, she conceded in the District Court that she "did not quote the [extreme hardship] statute" and "did not cite the [extreme hardship] law on paper to" the agency. Nevertheless, she asserted that the agency "know[s] [that she] has a disability of permanent personality and anxiety disorders and they did not care about [her] health." But the District Court properly found no fault on the agency's part "for being unable to intuit [Watson's] unspoken wish to invoke the Extreme Hardship Provision."

5

further Petitions are foreclosed."). The finding of a fraudulent marriage must be supported by "substantial and probative" evidence "documented in the alien's file." In re Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990); see 8 C.F.R § 204.2(a)(1)(ii). "The central question is whether the [couple] intended to establish a life together at the time they were married." In re Soriano, 19 I. & N. Dec. 764, 765 (BIA 1988). If the agency determines that substantial and probative evidence of fraud exists, it issues a notice of intent to revoke the immigration petition. Zerezghi v. United States Citizen and Immigration Services, 955 F.3d 802, 805 (9th Cir. 2020). The "burden shifts to the petitioner to establish that the beneficiary did not seek . . . status based on a prior fraudulent marriage." In re Kahy, 19 I. & N. Dec. 803, 806-07 (BIA 1988).

Prior to his marriage to Watson, K.S. married D.L., a United States citizen. USCIS approved D.L.'s I-130 petition to confer legal permanent resident status on K.S. K.S. and D.L. divorced in 2010, after approximately 18 months of marriage. K.S. traveled outside the United States in 2011. When he returned pursuant a grant of advance parole, he was detained, inspected, and interviewed by a Customs and Border Protection officer. In a sworn statement made at the airport, K.S. indicated that he had paid D.L. $5000 to marry him so that he could stay in the United States, that he had "put [D.L.] on [his property lease] and [obtained] a life insurance policy so that [he] could show immigration" authorities, and that he had lied about living with D.L. when questioned by an immigration officer. Those admissions clearly provide substantial and probative

6

evidence of marriage fraud.  See In re Singh, 27 I. & N. Dec. 598, 607 (BIA 2019)

(stating that "[a] sworn statement by the parties admitting that the marriage is fraudulent,

that money changed hands, and that the couple did not intend to live together or

consummate the marriage is direct evidence of fraud that is 'substantial and probative'").

Moreover, the Board properly held that Watson failed to rebut the finding of

marriage fraud.[5]  In support of her claim, Watson provided an affidavit from K.S. in

which he asserted that, although he did not "have a happy marriage" with D.L., he "never

paid [her] any money[] in connection with [their] relationship."  Addressing the sworn

statement that he made at the airport, K.S. explained that "[i]f I signed any such

statement, it may have been due to the unbelievable pressure that was placed on me while

I was under the Service's custody.  Undue influence was placed on me implying that the

only way for me to get out of my predicament at that time was by admitting that

something improper had taken place.  But such is not the case."  Watson also provided a

lease agreement listing K.S. and D.L. as tenants, and 2008 state and federal tax returns

for K.S. and D.L.[6]  Finally, Watson submitted two sworn statements from D.L. in which

---

[5] Watson had two opportunities before the agency to submit evidence demonstrating that K.S.'s marriage to D.L. was bona fide:  (1) in her challenge to the revocation of her approved I-130 petition; and (2) in connection with another I-130 petition filed in 2018. She submitted the same evidence both times.

[6] The Government cited the tax returns in its Statement of Material Facts Not in Dispute, but the returns themselves are redacted in the record.

7

she stated that her marriage to K.S. "was real," "was very real[,] [and that] [t]here was nothing fraudulent about it."

The Board was "unpersuaded by [Watson's] arguments that [K.S.'s] prior marriage was not fraudulent[,]" stating that her "submission of evidence, as a whole, [was] insufficient to refute the evidence of marriage fraud given by [K.S.'s] sworn statement before the USCIS in 2011." Although K.S. later disavowed the sworn statement, asserting that he made it under duress, we agree that K.S.'s general claim of duress was insufficient to undermine his detailed admissions about marriage fraud. See Matter of Isber, 20 I. & N. Dec. 676, 679 (BIA 1993). In his airport statement, K.S. provided specific responses to open-ended questions. For example, he identified the amount of money that he paid D.L. to marry him, he volunteered that he included D.L. on a property lease and falsified a life insurance policy to help demonstrate that his marriage was legitimate, and he admitted that he lied to an immigration officer in connection with D.L.'s I-130 petition. The specificity of these answers suggests that K.S. was not under duress and there is no indication that K.S did not understand the questions. Because K.S. admitted that he generated documents for the purpose of demonstrating a bona fide marriage to D.L., the Board reasonably discounted the documents, including the joint tax returns filed by K.S. and D.L., that Watson submitted. See Quezada-Caraballo v. Lynch, 841 F.3d 32, 33-34 (1st Cir. 2016) (endorsing the IJ's application of the doctrine of *falsus in uno, falsus in omnibus* in a marriage fraud case where the petitioner admitted that she

8

had submitted fabricated documents and falsely claimed that she and her ex-husband lived together).

In sum, the District Court properly concluded that the Board's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, we will affirm the judgment of the District Court. The Government's motion to file its brief and supplemental appendix under seal is granted; those documents will be permanently sealed. See 3d Cir. L.A.R. Misc. 106.1(c).

9